## O'Connor's Estate

*James F. McMullan*, for exceptant.

*Thomas B. K. Ringe*, assistant city solicitor, contra.

GEST, J., March 9, 1934.—Joseph J. O'Connor died September 4, 1929, insolvent, and at the audit of the account of the administrator of his estate the balance was ascertained to be $1,583.94, from which the auditing judge awarded the widow's exemption, $500, undertaker's bill, $500, and medical expenses,

$15.50, leaving $568.41 for distribution among other creditors. Among the creditors whose claims were admitted to be correct were those of the Commonwealth of Pennsylvania and of the City of Philadelphia for the board and treatment of Mary G. O'Connor, wife of the decedent, who was maintained in the Byberry Hospital as an indigent insane person. The claim of the Commonwealth was for board, etc., from May 25, 1910, to September 4, 1929, $2,012.29, and that of the City of Philadelphia for board, etc., from September 4, 1923, to September 4, 1929, $1,565. The auditing judge, under the authority of section 13(a) of the Fiduciaries Act, held that the claim of the Commonwealth was postponed to the other creditors. To this adjudication the Commonwealth filed these exceptions, claiming to be entitled to share pro rata with the general creditors, which exceptions were opposed by the City of Philadelphia.

Section 13(a) of the Fiduciaries Act, approved June 7, 1917, provides for the order of payment of debts as follows:

"All debts owing by any person within this State at the time of his decease shall be paid by his executors or administrators, so far as they have assets, in the manner and order following; namely,—One, funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent, and servants' wages, not exceeding one year; two, rents, not exceeding one year; three, all other debts, without regard to the quality of the same, except debts due to the Commonwealth, which shall be last paid."

The learned counsel for the Commonwealth argued that the phrase "debts due to the Commonwealth" means only such debts as are due to the Commonwealth in its capacity as sovereign, and not claims of this character, which are based, as was held in Ward's Estate, 22 Dist. R. 564, on the principle that, the husband being responsible for the necessary maintenance of his insane wife, he or his estate is bound to reimburse the Commonwealth which undertook to perform that duty for him. Ward's Estate followed the principle of Kolb's Estate, 6 Dist. R. 543, where such liability was enforced in favor of a county, and has been in turn followed in Thomas' Estate, 24 Dist. R. 31, Repsher's Estate, 24 Dist. R. 15, In re Fryer, 25 Dist. R. 447, Koontz's Estate, 30 Dist. R. 1049, and other cases. And it was argued that this construction of the Fiduciaries Act may be deduced from the history of the legislation. At common law, debts due to the King or Sovereign were entitled to preference, after payment of funeral expenses: 2 Bl. Com. 511; Swinburn on Wills, Part 6, sec. XVI; at least if such debts were due by record or specialty, and this provision of the common law was imported into our legislation in the Act of June 1, 1693, 1 Dallas Laws App. 32, Duke of Yorke's Laws 231, and the Act of 1697, 1 Dallas Laws App. 34, Duke of Yorke's Laws 265. The Act of April 19, 1794, sec. 16, 3 Sm. L. 143, made a radical change, establishing a new order for the payment of debts, and providing that debts due to the Commonwealth should be last paid. The Act of February 24, 1834, P. L. 70, sec. 21, followed this without substantial change, and this in turn was succeeded by section 13(a) of the Fiduciaries Act, so that the change inaugurated in 1794 has continued as the settled policy of our legislation for several generations. We find nothing in the history of our law to indicate that the word "debts" in this statute has any restricted meaning. It was indeed said in Carroll's Estate, 1 D. & C. 553, that the Acts of 1834 and 1917, above cited, related to the claims of the Commonwealth for taxes, but no authority is cited for this proposition, and we are of opinion that the phrase "debts due to the Commonwealth" was used in its most general meaning and includes claims of every character. It may be noted that this section 13(a) includes as "debts owing by any person . . . at the time of his decease" his funeral expenses, which, except in rare cases where the decedent may have contracted

in his lifetime for his funeral, cannot, strictly speaking, be called a debt due by him. These expenses are due from the estate, so that the word "debts" was evidently used to include all claims and obligations.

The Act of June 1, 1915, P. L. 661, was referred to in Carroll's Estate and at the argument of the present case, so we feel that we should give it consideration. This act is entitled: "An Act relating to the maintenance of insane, feeble-minded, and other persons confined in the various institutions of the Commonwealth; fixing liability for their support; providing for the collection of the moneys due the Commonwealth therefor, and for proceedings relating thereto."

Section 6 of this act provides: "All claims by the Commonwealth for maintenance, as herein provided, in the distribution of any of the estate of any person so maintained, shall take precedence and be paid after other claims which by law are now given precedence, and before any claims of general creditors."

And section 7 provides: "Where there is a claim against the estate of any person maintained in any home, hospital, asylum, or other institution, both on behalf of the Commonwealth and on behalf of any county or poor district, and there is not sufficient in the estate to pay the claim in full, the same shall be paid pro rata to the State and the county, in the proportion of the amount of maintenance legally recoverable by each."

It was held in Carroll's Estate that section 6 of the Act of 1915 was not repealed by the Fiduciaries Act, but it is clear, at any rate, that it has no application to the present case, as the preference there given to the Commonwealth is only for maintenance of the decedent, and not, as in the present case, for the maintenance of his wife. It may not be inappropriate for us, however, to state our views in reference to the Act of 1915, which, as we have said, was discussed in the argument.

It is true that the Fiduciaries Act contains no express repealer of section 6 of the Act of 1915, but it does repeal in general "all other acts of Assembly, or parts thereof, that are in any way in conflict or inconsistent with this act, or any part thereof". The Fiduciaries Act moreover expressly repealed the Acts of May 3, 1915, P. L. 218, May 6, 1915, P. L. 265, May 6, 1915, P. L. 267, May 14, 1915, P. L. 475, June 1, 1915, P. L. 682, June 1, 1915, P. L. 689, and June 11, 1915, P. L. 945, where, in every case, the titles of the repealed acts clearly and sufficiently indicated their scope and purpose, as does not the title of the Act of June 1, 1915, P. L. 661, for there is nothing therein to indicate the legislative purpose to overthrow the settled policy of the legislation relative to the order of payment of decedents' debts, so that it would seem to us the title of the Act of 1915 falls within the prohibition of article III, sec. 3, of the Constitution: Brown's Estate, 152 Pa. 401; Commonwealth v. Lakey, 88 Pa. Superior Ct. 399, affirming 8 D. & C. 471; Parson v. Downer, 9 D. & C. 246. Be this as it may, and the decision of the question may be properly left to the Supreme Court, we are of opinion that section 6 of the Act of 1915, even if applicable here, is repealed by the general repealer clause of the Fiduciaries Act, as it is clearly in conflict and inconsistent with section 13 (a) of the act. These sections of the Fiduciaries Act and the Act of 1915 cannot stand together, and there is no law or decision, so far as we know, that requires every statute to specify in exact terms the prior statutes or parts thereof that are repealed.

For the reasons above stated, we conclude that the auditing judge correctly rejected the claim of the Commonwealth. The exceptions to the adjudication are dismissed and the adjudication is confirmed absolutely.